So it may be Judge Tong's first day on the bench, but I'm pretty new to obviously presiding and I'm not very good at running the clock, obviously. But we'll be having, the next case will come up, come on up, Campbell v. UnitedHealthcare. Should I just take the lectern? Yeah, you can come on up to the lectern. We'll let your opposing counsel get seated or whatever and then we'll, you heard the drill. Go ahead and give us your name for the record and how much time you'd like to reserve for rebuttal and I'll try to keep us on track. Okay, good morning. If I might reserve five minutes for rebuttal. Good morning, Your Honors. Jonathan Stieglitz for Appellant Leah Campbell. Thank you, Your Honors, for allowing us to give oral argument here today. May it please the Court. Ms. Campbell's briefing goes through a number of matters and bases for reversal or vacating the lower court's decision. I'm ready and able to discuss all such bases, but I want to focus on two specific ones. The first basis is the denial of payment for the assistant surgeon's claim. As presented in our papers, there was no basis for United's denial of the claim and the district court's affirmance of United's denial was entirely sua sponte as it was based on, as it was not based on any argument put forth by United at any time. The second basis. As I understand it, the insurance company, I guess, ignored the, the primary surgeon's report that uses the phrase we and obviously referring to the assistant surgeon. But United apparently took the position that they needed a separate report from the assistant surgeon outlining what it was that he did during the procedure. United's position throughout the lower court's case was that the procedure was not proven to be an emergency. That was their position throughout the lower court's case. But when it came to the assistant surgeon, I thought they also complained about the lack of documentation as to what he did during the procedure. The language from, I believe from all of their briefing that they submitted to the lower court was due to the failure to include medical records in support of the claim or appeals United was unable to determine that plaintiff's bariatric surgery was emergent. So that's what they, so let's go back a little bit. My, yeah, my understanding is that was kind of their argument in the lower court. Yes. But the actual notices they sent to Campbell or, or to your client or to the doctors, I can't remember who, was that the services billed were not documented as performed, which that certainly wouldn't tell me. I'm not a, I'm not a doctor. That wouldn't tell me that it was emergency or non-emergency. It's a little unclear what that means, but it seems to me that would mean that, and this is, this is for the assistant surgeon. So it could be saying that we don't have any documentation that this procedure was done at all, which that seems at odds with the fact that they eventually, well, they did pay out the surgeon. So that'd be weird that they would pay for the surgeon. So that seems like that. And then the other thing that it seems like when you jump over the emergent, so then you go, if that was what they meant, and then you get to the, well, it was an emergency. And then I think in the lower court, after the lower court made his decision, they said, well, you didn't properly document that the assistant surgeon was there, but that it's not clear to me that that's what, I'm not sure if I would understand this to be saying that instead of saying the service, I guess you could say the services billed were not documented as performed because the services billed means the services by the assistant. I have the same concerns. I don't under, I, we didn't, we followed along with what their argument was before the lower court. Their argument before the lower court was the procedure was not an emergency. And so therefore we respond to that in our briefing before the lower court. Now, I assume they're going to, they're going to stand up and say, no, that's what that always meant was what the lower court concluded. Sure. The problem is, I guess then the question becomes how much of a duty do they have to, uh, to explain that to you instead of just saying this over and over and over again? Um, and I think what was the, what was the decision that, um, decision written by, uh, judge Kaczynski. Yeah. Or he's like, you can have a, you have to have some dialogue here with people. I mean, that may be exactly what he said, but anyway, uh, that that's, that's my position as well. Your honor is that I would think that there would be some sort of dialogue explaining what they needed. Um, we provide, we also, we also did provide the medical records. There are, there were medical records in there's medical records that show there's also a consult note, which, uh, my friends on the other side did not even reference in their answering brief. There's a specific consult note from the assistant surgeon. So he was the consulting physician who saw the patient when the patient came into the, through the emergency department. He was the one that saw the patient and indicated that they were to then proceed to surgery and he signs it. And so he's, he's literally the same. It's the same, it's the same surgeon who's listed on that consult note. And that was the only report he didn't do a separate surgical note report. He would not have done it. He would not have done it because he was, it's the treating physician. The one who's literally leading the surgery is the one who's going to, he did it. And he referred to, we referring to the doc, right. The primary, the primary referred to we throughout the operative report because it was done in tandem with the other, the other vision. There's also, I'm sorry, go ahead. No, the only thing I was going to say was also they knew about this because we followed their policy where they indicate that you're supposed to put the modifier 80 on the bill to indicate that an assistant surgeon was working on the procedure. And I think it's, it's interesting actually to note. So you add 80 to the, to the bill, to the bill that was submitted. 80 was added to that same procedure code, which is the exact same procedure code that was provided by the primary surgeon. So they, they know same, the two, two doc, two physicians did the surgery together. They added that modifier. So they know this was assisting. Yes. So if we agree with, if we were to agree with you on the assistant surgeon, that then, then I'm trying to think of how that affects attorney's fees because, you know, I think their argument as well, we mostly won, you mostly lost because, but that kind of goes off the table if you lump the surgeon in there and then the assistant surgeon in there. So I, I had an interesting, so Lodestar method, the Lodestar method, I'm always, you know, it's always the same. It seems like, you know, I don't know why it's even called Lodestar, but you have all the, you basically submit a bill and then the district court or the court appeals or both trim it, trim some off of it because they say there's too much fat. Does, but can the, have you ever, are you aware of any cases where the Lodestar actually goes up because of like bad behavior by the defendants or, or, you know, I suppose that because this is an important case for the cause to where, to where a court could actually say, you know, you, you billed 150,000, but we're going to give you 175 because the real, because, because you, you know, it always goes the other way, it seems like. There are some cases that indicate that you do that, but it seems like the vast majority of the recent case law in the Ninth Circuit has been that that's all built into the cake of everything. And that's, so there's no, there's no real mod, there's no additional amount. There's some, there's some, there's some cases that talks about if you're on contingency that maybe you could seek additional fees because you're on contingency. And so it's, there's no, there's no certainty in that. But then I think recent case law has said that that's, you, you, you, you're not going to be able to get that type of modifier, but I, I haven't briefed on that issue and I don't want to speak at a turn on it. That would be something that the district court would decide on remand, not us anyway, right? I think that's right. It would be abuse of discretion on review. So why would we decide something like that? I think that's right. And I think, and I think what the court is saying is absolutely right. At minimum, at minimum, I think the, if the court is not inclined to reverse or, or at least vacate and remand with respect to the attorney's fees provision. Also, I think that because all, everything has been changed now that the assistant surgeon, now the assistant surgeon claim has, if the court were to say that the assistant surgeon claim should be processed, remanded to the plan, and then perhaps reprocessed and paid in the same fashion that the primary surgeon claim was, then that would change the entire analysis as it pertains to the fees. And so probably everything would have to start all over again. But the invoices would have remained the same, right? The invoices remain the same. The invoices have remained the same from the beginning. And I, and I apologize. You did, you did make minor modifications. As to the, but not to the time. Right. Never to the time. Only to the, only to, only to the description to indicate going from drafting brief to perhaps research related, relating to the drafting of the brief. And I apologize to, and I would apologize. I purposely asked for reconsideration of the district court and gave him everything so that he could see everything that we did. And so there would be no, there'd be no confusion, no question about it. Counsel, that was on your third try. Yes, Your Honor. The first time you submitted the invoices, all the entries were redacted. Yes. So how is a judge supposed to figure out what to award? I completely understand, Your Honor. And the reason why we redacted is this is, I've had a number of cases with my friends on the other side. And this was, that was one of my first times submitting a motion for fees. And I actually was copying some of the, the way that they provided their timesheets and they were always fully redacted. And so I, I. How's the court supposed to figure out whether the fee is correct or we have no idea what you did? It was a mistake on my part. It's just 5.7 hours at $650 an hour. It was my mistake. And then the math was wrong. That's why we moved it to an Excel spreadsheet so that there would be, that you could just press the button that just says. The computer will do it for us. The computer will resolve the issue and it won't be, it won't be a person trying to do math. Let me ask you this. If the court had then just denied your request for attorney's fees, then and there with prejudice, would there be an abuse of discretion? If the court had denied relating to the redactions. Right. And the math error. I think, I think still yes, based off of all the case law, which indicates that if you are the prevailing party under, under the Hummel analysis that you're supposed to, you're supposed to, you really have to, it seems to me from that, that there are all the cases, there's no cases, there are none, my friends on their side don't cite to any cases that indicate where an ERISA plaintiff prevails or has some, some success on the merits under Hummel that they should get nothing. I don't think there's any cases. I don't think I've ever seen a case where all of the time entries were redacted. I mean, I don't know what a district judge would do with a attorney's fee motion that doesn't tell you anything other than numbers. I understand your honor. I was, it was not, it was not. So you don't think that would be, do you think that would still be an abuse of discretion if the court denied fees altogether based on the lack of adequate documentation? I think it was a mistake on my part. And I appreciate the court giving me a second opportunity to file the brief, to file it, to provide an unredacted version. But then his concern was, well, you've changed the wording of the entries. So now I have a credibility problem. I don't know what that would mean. But you also had, at the same time, you also had a copy of defense counsel's time sheets as well. So you can see that our time matches up significantly and that everything, that everything goes in lockstep. And so I think that, I think that sort of, even if there were some level of a credibility problem, that certainly brings our credibility back into focus. Our bill is reasonably similar to what their bill was. Exactly. And so then under all the case law, he could have given me a significant haircut. He could have taken off 30%, 40%. I think in that case, your honor, I think there would be no question that there would be really no basis for appeal. Okay. All right. Well, I think you want to, oh, yeah, I've got a procedural question for you. Why did you not move the district court for an order to compel production of the full administrative record if you didn't think that United was giving you everything that was in their files? We had, we get, it was a very short timeline on things. The timeline in Judge Klausner's cases are very short. I was just trying to work my way through a 1600-page administrative record. And I was trying very, very vigorously, and I think you see that in some of the documents, to try and get the UCR data. And that was a huge issue before the district court. I had to, I had to. Which had to exist, right? Because how can they compute a UCR unless they know what the usual and customary rate is for surgeons in the vicinity. Exactly. But they were also taking the position, and you see this throughout their briefing, that they had actually considered it by sending it to multi-plan. And it was not even temporally possible for them to have actually done that. So that was what it might make. Seems to me if you'd filed a motion, it would have been a slam dunk win in front of, well, maybe not in front of Judge Klausner, but I mean, he's a good judge. He's a very good judge. I just think that it's the time, the time constraints, and the fact that I was very focused on the primary surgeon, which is the larger claim. I mean, there's only- Larger by $1,000, isn't it? $160,000 and $159,000. Yes, but in terms of what the plan will ultimately pay, it's going to be at least four factors bigger. If you were to look at, for example, I cite to the M-SurgCare case, you'll see that very often what they do for assistant claims is they pay 16%. 16? 16% from baseline- How can you make money at 16%? Well, it's 16% of the primary claim. So the primary claim might be perhaps $40,000 as it was here, and then 16% of that would be like $7,000. So my main focus, of course, was towards the primary claim because I want to make sure when you're dealing with those types of things, you want to get- It wasn't easy to show in time how they did not consider the UCR and- Your $7,000 doesn't seem worth taking a federal appeal, but you repeat- I think I had one of your cases, the last sitting I was on or something like that-  Yes, your honor. Where United was misbehaving. And so I assume that you're doing this not for the $7,000, but you're trying to get some sort of favorable to get United to engage with you more on these cases. Yes, your honor. Okay, that's where you're spending my- Okay, we'll hear from the other side. May it please the court. Amanda Genovese of SyFarth Shaw on behalf of Appellee's United Healthcare and Insperity Holdings. I want to react to a whole bunch of different things that just occurred. We're dealing with an ERISA benefits dispute. We were dealing with two separate providers that billed separately under the corporate identities, appealed separately, received documentation separately. And that's critical. When we were talking about the administrative record in this case, I think, candidly, I think everyone's been imprecise. Because there was one administrative record for this case, but really there's two administrative records here. One for MSurgCare, which is the primary- The administrative record for the assistant surgeon claim. Yes, we did, your honor. Did it include the UCR documentation? That was not in dispute. That's for the MSurg claim. The emergency surgical assistant claim was denied because there wasn't proper documentation to substantiate the emergency billing of CPT code 43774, which is for- So that's what you say, but what you said in the denial was that the services billed were not documented as performed. Is that right? So I think we have to go back to the first correspondence of June 18th, 2020, where United wrote ESA in particular, and I'm going to refer to emergency surgical assistance as ESA, noting that, and this was after receipt of the claim that it submitted, it needed more information before it could process the assistant claim. And it asked for, quote, all of the treatment records for every date of service on that claim to determine eligible expenses. That is consistent with the remittance advice that was sent that noted that United asked for additional documentation. It referred ESA to its previous letter requesting that additional documentation. And then subsequent correspondence on appeal kept pointing back to the point that we needed medical records to substantiate the emergency billing. And this is important. I really want to make sure the court understands. This is an ERISA benefits dispute. The plan here is the guiding light.  And you did not provide the plan. Well- You didn't provide the plan. I mean, the lower court concluded that you did not provide the plan. And then, so I, it's funny because you say that here and you said that in your brief, you know, the plan, you keep pointing the plan, but the lower court said you didn't provide the plan, but it's not a big deal. But there seems to be some tension between that, the lower court's conclusion, that's not a big deal. I'm not going to award any damages for that. And your statement in your brief and your statement this morning that, no, the plan is the big thing here. Well, how, if they don't have the plan, how can they- Two responses. The requests that were made to United specifically, United is the claims administrator. It's not the plan administrator. The regulation that they're pointing to for statutory penalties, which is discretionary, is the obligation of the plan administrator to provide that documentation. You got a copy of the plan, right? Correct, Your Honor. So why couldn't you provide a copy of it upon request to the claimant? That's not an obligation under ERISA for a claims administrator to provide a plan in that context. But we're, I think we're also missing the point here. If you're an assistant surgeon and you're billing for emergency services, and again, I want to point out emergency services, because the services that were billed under CPT code 43774, if we were to just isolate that code, that is for a lap band removal. There was an express exclusion in the plan for bariatric and obesity surgeries. Okay. The only way they get- That is if you're going in, you want a lap band installed because you want weight loss. Yes, correct. The problem here was we had an infected band from a prior installation. And your client apparently took the position that this was not an emergency. Because there wasn't documentation submitted by emergency surgical associates. So the initial- Substantiated billing and coding. The initial treatment notes in the emergency room by the assistant surgeon were not supplied in connection with his claim for services? That is correct. Were they supplied in connection with the documentation for the primary surge? That is a separate claim that was billed. But you had both files. You should be able to answer that question. Your Honor, that is not an obligation. I don't have to look in the other file? Is that the position you're taking? Even though it's in my possession? Correct, Your Honor. Where in the plan document does it say that these separate filings need to be made with respect to the documentation? It's one claimant, one surgery. And you have documentation. And I don't think you're disputing this. You had documentation in your possession that Dr. Feisbach and Dr. Rim both performed the surgery, right? Your Honor, you're saying that there's one claimant, but that's actually not the case. Here, two separate providers billed. They billed under their separate tax identification numbers. Two separate claims are generated. The same adjuster on both files? Your Honor, that's not clear if we have the same adjuster on both files. Do you even know? No, Your Honor. Who adjusted the claim? Their employee? Your Honor, these claims are submitted. And in many instances, there could be an auto adjudication or there could be a record. Oh, so a computer is the... No, Your Honor. That's not what I'm saying. What are you saying? I'm saying that this case could have actually been brought as two separate disputes. One by MSurgCare. We understand, Your Honor, because this is the same argument in your brief. I understand it. I understand it. And we're all judges, lawyers. We understand. You got to follow the rules. And that's basically your argument. But in the Kaczynski case that I'm forgetting the name of again, I mean, I thought there was a very... The horse kick case? The horse kick, wasn't she? Yeah, the horse kick. Yeah, that's right. The horse kick. In that case, I thought it made a good point that you... It's very similar, it seems like, to this case in that you say, well, you didn't do this, didn't do this. But it does appear as if the claimants here are trying to find out what is it more you need. Because, I mean, sitting here, we know that the assistant surgeon was involved in this  And so whatever the rationale... And we also know that it was an emergency surgery. I don't know that you're disputing that. So you're basically saying, well, we denied it on a technicality and we were right to deny it on technicality. The problem with that, not because it merited denial, but because we were right on the technicality. The problem with that is it does seem like there's some obligation for you to dialogue in good faith. And it's really hard for me to see how... I've looked at all of the briefing that you supplied on the back and forth. And it just feels like they're literally getting the same answer. They're like, what do you want from us? What do you want? And they're just getting the services bill were not documented as performed. If you're referring to Boutin, I mean, in that case, the initial correspondence that was sent there basically addressed or suggested that certain types of coverage wasn't available, which was just fundamentally wrong, which didn't allow for that open communication back and forth. Here, there was no inconsistency in our communication for emergency surgical assistance. Didn't you initially deny, at least, didn't you initially deny because you said it wasn't emergency surgery? No, you're referring to MSurgCare. Here, we denied for lack of documentation. Well, how are they supposed to know, from their perspective, how they're supposed to know services bill were not documented as performed, whether it's because you don't think it's... Because a reasonable person would be like, well, that's what they denied the other one for. So that's probably why. I don't know why they're saying that. I thought we'd crossed that bridge already. Again, if there was some sort of dialogue, you would have just paid out the $7,000 and we wouldn't be here, it seems like. But you don't think you had any obligation to try to figure out?  Okay. No. And the reason for that is, think about this. So you need some help. It sounds to me like United needs some help to realize they have that obligation. Your Honor, these were separate claims submitted by separate providers. You have to think about them in a silo. But where in your, I guess, going back to my original question, where in the plan allows you to rely on that technicality to deny Ms. Campbell's claim? That she needs to submit separate documentation, even though there was one surgery that was performed. And one insured. That's a decision by the providers to bill. These are out-of-network providers, and they made the decision to bill separately. They're billing under their own corporate identities, MSurgCare versus ESA. They're submitting separate claim forms. Right? So just to answer, the plan does not require. I think Judge Sung has asked this question several times. Where in the plan does it require? And I haven't heard you say where it does. That is basic claims adjudication under ERISA. There's no obligation for a claims administrator to go out and search records that are not before them related to adjudicating the specific claim that was submitted. So your position would be, if this insured had been seen by five different specialists, you would expect five separate claims to be submitted on behalf of each of the doctors who treated her? That would be accurate if those providers were billing separately, which is different from a facility claim, right? And your position is that the insurer is under no obligation to look at the documentation in any of the related claims treating this insured for the same medical condition. That's correct. It would be untenable.  It would be a wild goose chase to try to... A wild goose chase when you're looking at documentation from the same medical emergency by one patient? Claims could be submitted at different periods of time. Claims are submitted under different... You've got two different files, but I only have to look at the one file for the assistant surgeon. And regardless of what I know for the primary surgeon, I won't look at that documentation, which clearly shows that there were two surgeons. Well, again, Your Honor, it's the obligation of the provider to substantiate that they rendered the services for which they're seeking reimbursement for. But you recognize, you would agree that you have an obligation to clearly tell them what they're missing if they're missing something that they need to provide. Your client has an obligation to tell them clearly what they're missing. I would say to tell them what the denial of reason is and what would be missing. And here we did. Not once, not twice, but five times. You kept telling the same thing over and over again that I can't tell from that statement what that necessarily means. And they kept saying to you, well, what do you need? And they would just get the same auto answer back. Your Honor, I would say that that's not what the appeal letter argues. They didn't inquire about what was specifically needed to substantiate their records. That's not what's in their appeal records. What they say is that the services were medically necessary. It's a standard form. If you look, all the appeal letters look exactly the same. They weren't asking that specific question. We engaged in the adequate dialogue. I also think we're moving kind of away from general ERISA principles. And here the district court looked at the information before it, made a determination under the abuse of discretion standard overview that United's determinations as to ESA were reasonable. Counsel, your friend on the other side made the statement that at the district court level for the very first time, it was the district court, Sue Esponti, who pointed out after reading the documentation that there was, the denial was based on a lack of documentation as to the assistant surgeon. Is that statement accurate? Was it raised for the first time, that basis for denial at the district court level? It was raised multiple times in our opening brief, in our opposition brief, in our statement of facts. But prior to that, in the administrative record though, there was no clear statement that you were denying Dr. Rim's claim, just to borrow your terminology, on the basis that he himself lacked medical documentation. It was raised no less than four times. Where? It was raised in an August 18, 2020 letter sent to Dr. Rim. It was raised in the PRA, which specifically said that the claim was denied for lack- How was it raised in that first letter? What did it say? In the, we need more information to process the assistant surgeon claim. And we ask for all treatment records for every date of service on that claim. That's when- Do you have an ER site for that? Yes, Your Honor. I would refer to ER 1119. Actually, it was raised prior to that, Your Honor, too. If you give me a second here. Okay. Also, ER 1206. And then I would also direct the court to ER 1278, which is the appeal that was sent to United only. Again, not to insperity, which references Blue Cross, not at issue here, and says that it was an emergency surgery, but then fails to substantiate with those records that were requested all the way back in July. And then explicitly referenced in the PRA that the claim was denied for lack of documentation. Counsel, I'm looking at ER 1278 that you just referenced. That's a letter, I think, from Dr. Sean Rim, right? It's not an appeal denial. I was referring to that last one as being the appeal letter that Dr. Rim sent in and what was being argued in that appeal letter. And there, again, no records were submitted to substantiate. Did anybody ever say to Dr. Rim, look, we need a report from you as to what you did? Yes, we said that explicitly. At ER 1106, again, this is June 28, 2020. Dear Sean Rim, we received the above claim for Lee Campbell. Before we can process this claim, we need more information. Please send all of the treatment records for every date of service on the claim. These records should include, but may not be limited to, the first date of service reference above. And then it says, please provide the following information, a copy of this letter, patient treatment records, and a whole bunch of criteria underneath it. Subsequent to that, in the provider remittance advice, which details the denial reasons, it stated that the claim was denied for lack of documentation. If I may, Your Honor, I also want to address the state, unless the court has any additional questions as it relates to the ESA claim. We're kind of out of time, but what were you wanting to address? You may have your rest on your briefs. Yeah, no, so I think that the other main thing is, I think we were playing a little bit light with the fact that that plaintiffs submitted altered, unreliable records on three separate occasions. In the renewed motion for attorney's fees, Judge Klausner, in a footnote, also noted additional issues that he found, and I'll quote his words here, troubling associated with the medical records, or associated with the billing records that were submitted. What I would say is, Hummel factors aside, there's still the burden to demonstrate reliable contemporaneous billing records for purposes of the Lodestar analysis. Judge Klausner did not abuse his discretion in denying those discretionary awards under ERISA, so we submit that there's no basis for the court to overturn that decision denying attorney's fees here for appellant. Do you have a case, though, that has affirmed a district court's denial of fees entirely when it's clear that there was some work performed by the attorney? Yes, there has been. For example, I would direct the court to Barboza. Actually, let me just apologize to the court on that one. There's been several cases that we cited in our briefing, Your Honor, where just on the basis alone of not providing reliable contemporaneous billing records, fees have been denied. That is the last part. In the ERISA context? Not in the ERISA context, no, Your Honor. But I'd also like to say that if you look at Judge Klausner's order, Judge Klausner acknowledged that the Hummel factor analysis was not a tough hurdle to overcome. And also when it denied with prejudice defendant's award for attorney's fees, it said that any sort of success would likely be offset by the success of defendant. In other words, the Lodestar analysis would be down and probably end up at net zero. Thank you, Your Honor. Any other questions from my client? Thank you, counsel. I'm kind of a hot bench. Appreciate your argument. We'll hear a rebuttal from balance. Okay, just wanted to point to a few quick things. It's ironic that my friends on the other side would say that the record is limited by each particular physician. When in numerous cases, and I think we even reference a couple of them. I think the Solis case is one of the cases we reference where they were able to get documents into the administrative record that were never provided to the insured. And they were pure policy documents that existed somewhere in United's ether. And they were able to just pull them out and include them as part of the administrative record. And the basis for that was that all documents that are in United's possession, in their possession, based on Montour and Kearney, that they would be able to reference those documents. I think this is a little bit even closer here because we're dealing with the same insured. Well, I didn't hear counsel say, we didn't have them, therefore we couldn't produce them. Right, so what I'm saying is the standard, I think the Ninth Circuit puts forth is that it's in their possession. If the plan has it in their possession, they have to consider it. That's what I think. As I understand what you're saying, you're saying at least they've taken the position before that if it's in our possession, we can bring them into the record.  But in this instance, it was clearly in their possession. Yes. But they're saying we had no obligation to look at that. Correct. What about their, and I think I understand you're right about that. What about their position that we did specifically tell you we need the, for the assistant, we need the treatment records. So what's interesting is that, and what's interesting is that my friend doesn't even respond to what their argument was to the district court. Their argument to the district court, and I read it to the court here, was that the procedure was not an emergency. They never argued that we didn't have documents. They never argued that we didn't have documents as pertained to Dr. Rims, certainly. So I understand that, but that is the, that is the, what the district court relied on, because he recognized that that was a better argument for them than the one they were making. So, and now they're going back and saying, yeah, and that's supported by these documents that were in the record. Is that correct or not? They're saying that there are no documents in the record, which is actually plainly not. Well, they're saying that these letters are in the record. Well, they're saying that Dr. Rim himself, that the new argument that they've created for the purposes of the appeal, and after Judge Klausner came up with that argument for them, they're saying that there were never any medical records submitted by Dr. Rim that would support. For example, one of the ER sites that counsel provided to us, ER 1106. It's a letter addressed to Dr. Rim. Yes. Saying, we need more information. Please send all the treatment records for every date of service on the claim. And it lists, it bullet points the information that it requests. I will concede that the administrative record may indicate that Dr. Rim should have sent documents, and he did. And there's proof of that in the administrative record that he sent those records. We reference it at- Did he send a copy of the primary surgeon's post-procedure notes? I would contend that yes, he did, because they mentioned at six- I see, but that's not in the record, because you're saying that they didn't, even though he sent it in, you don't have a proof that he sent it in, and they don't have it in the record. Well, they say 6ER1234, relating to Dr. Rim specifically, 6ER1234. Documents can be found in Doc 360 for the medical records. And that's related- What are those documents? We don't know, because they never gave them to us. They didn't produce them as part of the administrative record. So they're trying to say, we don't have it. They have provided it. You're asserting you did provide it. They're saying you didn't. The thing you can point to is a statement in the record saying there's some documents, but we don't know. A statement by them, that they put in their own internal notes, saying we have medical records. Do you have a document in the record of Dr. Sean Rim submitting medical documentation that the surgery was done? Do I have what they gave me? In terms of the administrative record. They contend that Dr. Rim- Which does not include a copy of the primary surgeon's procedural note. It does. Of course it does. Because the administrative record they gave me was the administrative record for Ms. Campbell, because that's the way you're supposed to provide it. It was administrative record for the entire Ms. Campbell case. And so they gave me both- Including both claims. Including both claims, which includes the operative report for the operative report. Which uses the word we. Which uses the word we. And the consult note, which was written by Dr. Rim. Okay. And so they also acknowledged, we had these- They also acknowledged that as it pertains to Dr. Rim, he sent us records. It says that in their notes. They just didn't produce those to us separately in the overall administrative record that they gave us. Does that make sense? Yeah, sort of. I'm saying, in the administrative record, there are documents showing that Dr. Rim did the procedures- It seems you're taking the position that the only obligation they had was to produce the administrative records relating to the claim number assigned to Dr. Rim. Right. So that's contrary to the Ninth Circuit authority. And it's contrary to positions that they've taken in the past. And that's also contrary to- It's also- Take positions when it would benefit them to expand the record to include other things that aren't necessary. But counsel, we need not reach that question, right? If we find that there was a lack of meaningful dialogue. No. If you want to- If the court wants to say that they didn't engage in a meaningful dialogue, it would remand back to the district court to- Well, they just kept saying the same thing, right? Using the same phraseology. They've been doing that in a number- In many cases, which is- So, can I interrupt? We've taken you way over. But on the fees- Is it all right to jump in? Yeah, yeah, yeah. So, on the fees, it seems like, you know, there could be various issues in this case. But I don't think there are. I just want to- There could be the question of whether or not, when you sent in a completely redacted attorney to be saying that the math didn't add up, could the trial judge have said, done, you lose, you didn't provide. And assuming, let's assume for a second, that legally he could have done that, that would not have been an abuse of discretion. But that's not what he did. So, I'm not sure that's in front of us because that's not actually what we're reviewing. And then the second question is- So, I think even case law about the fact that you should get attorney's fees, it's all kind of irrelevant. The specific issue in front of us is, I think, if I understand, is once he said, you know, I'm going to give you fees, but you gave me the wrong thing. So, he overlooked, he was willing to overlook your screw up on the fee. And then when you provided the new one, the idea that there were- that they didn't match up because you would- I think that's really what he's upset about, was that they didn't match up. What is the case law on- Are there cases that support that the redactions have- that the- when you do something like that, and you provide something, a new- an unredacted version, that it's understood that it will be the same and not be changed? I'm trying to figure out, like, what case law governs that particular question? That seems- First of all, A, is that the question that's in front of us? I don't think- I don't even think- I think it's important to also consider what the court's actual order was in allowing me to make- to fix my mistake. The court said there was no limitation in terms of fixing the language in the way that I did it. I didn't add any more time. I made sure not to add any more time. But in terms of clarifying the whole- the whole- the way that I understood- and I mentioned- I argued this to the district court. The way I understood his allowance for me to resubmit was to clarify everything. So that's what I did. I wanted to make sure that it was completely understood what everything was. So instead- so- and the court's order did not mention that I was- that I could not add language to explain, okay, well, I did it. I drafted a brief. Can I also indicate that I did research relating to the brief in connection with that? The court didn't say, don't add any descriptive language. The court simply said, fix this mess. So it kind of comes down to whether or not an ordinary lawyer would understand you can't change anything in those- and that's kind of your argument, is that I don't think that- without the judge telling me one way or the other, within- encompassed within the idea what he was asking you to do, it would be allowed to expand the descriptions. You'd think it was not unreasonable for you to expand them. I don't think so. I don't think so also. And I don't think so. But- and also the court indicated, is there any case law? I think we mentioned in our opening brief, we do cite to some cases where somebody would- there were attorneys who submitted- I don't have the citations right offhand, but it's in the opening brief. We didn't talk so much about it in the reply brief, but it's in the opening brief where we discussed there were some cases where an attorney, I think, submitted just like notes. And then- and then the court's like, no, go back. Fix that. That's a mess. And then they resubmitted it again. And there was- there was additional language and things in there. And the- and- and that was acceptable. So there is case law that supports that what was done here was not out of scope with what's been acceptable. Counsel, it wasn't- as far as I can tell, and I looked at the- did a compare and contrast, you had added some time entries for certain dates in your second submission, right? And you had deleted some to it. So it wasn't just mere clarification of pre-existing time entries. Is that- is that accurate? I- I- I don't believe- I- I don't believe- I don't believe we did. If there was one, it might have been to break up something that was- to break something was- that was a long line into two. Breaking up a block, Bill. Breaking up a block into two. But I- I- standing here today, I- I- I- they did not point to anything in their briefs that mentioned anything like that. Well, how did- how did the district court determine that there were changes to the wording if the first round contained everything redacted? They just- he just compared the- the length- because I only- because I didn't- I didn't- I didn't redact- I didn't just make the entire thing black so that he couldn't see the length of the entry. You could see the length of the entry, so they compared the length of the entry in the prior submission to the length of the entry in the later submission. All right. Well, we've taken you way over. Any- any other questions? Your Honor, I apologize. On the statutory penalties issue, so can you- can you explain that? You- you've asked for the plan. You've asked for the administrative record. You weren't given those according to your position. The statute refers to the administrator. Administrator has the obligation. And there's case law, if I recall, that identifies the administrator as the plan administrator. And United is arguing that it's not the plan administrator. It's merely a claims administrator. Are they a plan administrator? I didn't conduct any discovery into- into this issue. Again, it was a very short timeline. We argued that in- Insperity is one of the appellees in the case. They were- they were the defendant- they were defended in the case. I'm not sure, based on the case law, that United, specifically, would have an obligation to- to- if they failed to provide the documents, if they would- if statutory penalties should be assessed against them. I mean, the plan does say that United shall- shall share responsibility in administering the plan. And I guess my question is, does that make him- make them a plan administrator for purposes of the statutory penalty? The district court seemed to think so. And I'm- I defer to the- in that regard, I guess I- I mean, the district court seemed to think so. That's all I can say on the subject. I don't- it would be- it would be my contention, obviously, that they should be responsible, as well as Insperity. But- And what documents would you be entitled to, assuming that United is a plan administrator? Yes. You've asked for the plan. The plan. They have to turn over the plan. Anything else? I think beyond the plan, I think the case law from the Ninth Circuit is clear that beyond- there's other documents, but none of the documents that we asked for beyond the plan would be those documents. It would be- I think there's, like, things relating to- not- they wouldn't be, like, the medical records. They wouldn't be, like, those things that we- those other things that we asked for. They would be the- but it would be the plan. That's a very helpful clarification. So my next question would be, how do you articulate your prejudice in not having received the plan? So I think there's a problem with it. The whole thing with the plan is- it's a very interesting point that you're leading me back to something that my friend on the other side said, which was she kept referring to the plan, but they didn't even know which- but they didn't even know which plan they were supposed to be using. There's a- the whole thing with the UCR, the whole problem they contend with the UCR, and why they didn't even send me the UCR doc- UCR information in the first instance, and why they didn't process the claim in the first instance based on the UCR, is because they contend that they were relying on a 2021 plan as opposed to a 2020 plan. I don't think it's fair- this whole reliance on plan versus- which plan they're going to be relying on, especially in light of that. If they had provided you the plan, at least they would know which plan they were supposed to- That would have been helpful, yes. Thank you, counsel. Thank you. Thank you to both sides. Again, very- took you both well over time. Thank you. This case is submitted. We have-
judges: TALLMAN, VANDYKE, TUNG